## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### Southern Division

| | | |
|---|---|---|
| TERRI LEE NICHOLS on behalf of herself and others similarly situated, | : :<br>: | CIVIL ACTION FILE NO. 4:23-cv-10473-FKB-APP |
| Plaintiff, | : : | |
| v. | : : : | Honorable F. Kay Behm |
| ACCRETIVE CAPITAL LLC DBA BENZINGA | : : | |
| Defendant. | : : | |

_____ /

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STRIKE THE PLAINTIFF'S CLASS ALLEGATIONS

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Does the Plaintiff's complaint sufficiently allege Article III harm after she received repeated unsolicited telemarketing calls on a number she registered on the National Do Not Call Registry from a company she had no relationship with?

   Plaintiff's Response: Yes.

2. Since it is plausible (and the Plaintiff submits likely) that the Plaintiff's proposed class will be certified, does the Plaintiff get to conduct discovery regarding Benzinga's telemarketing conduct instead of her class allegations being stricken prior to the commencement of discovery?

   Plaintiff's Response: Yes.

## <u>STATEMENT OF MOST APPROPRIATE AUTHORITY</u>

### <u>Federal Statutes</u>

47 U.S.C. § 227

### <u>Federal Regulations</u>

47 C.F.R. §§ 64.1200

### <u>Federal Cases</u>

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).

*Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88, 92-94 (2d Cir. 2019).

*Chapman v. Nat'l Health Plans & Benefits Agency, LLC,* No. 22-10229, 2022 U.S. Dist. LEXIS 138916, at *4-7 (E.D. Mich. Aug. 4, 2022)

*Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017).

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015).

*In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996)

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016)

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020)

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Terri Lee Nichols ("Plaintiff" or "Ms. Nichols") took the affirmative step of registering her telephone number on the National Do Not Call Registry, which is designed to prevent the receipt of unwanted telemarketing calls. Despite her registration, the defendant Accretive Capital LLC d/b/a Benzinga ("Benzinga" or "Defendant") placed at least twenty telemarketing call text messages to her residential cellular telephone number. Benzinga has now moved to dismiss her claim or strike her allegations regarding the class of similarly situated individuals that she seeks to represent, both of which should be denied.

First, Ms. Nichols has pled sufficient Article III harm when her telephone number received more than 25 telemarketing calls after she had registered that number on the National Do Not Call Registry. The Plaintiff has alleged that her telephone line received multiple unwanted and invasive telemarketing calls in violation of the Telephone Consumer Protection Act. These allegations clear the "low hurdle" that is Article III standing, as recognized by every appellate court to consider the issue in the context of telemarketing calls under the TCPA to numbers on the National Do Not Call Registry as well as other district courts in the Sixth Circuit.

Second, Ms. Nichols class allegations should not be stricken at this stage. As courts around the country have held in TCPA cases, it will be discovery that will determine if the plaintiff's class is amenable to class certification, as most TCPA cases are. As one court summarized while certifying a TCPA class: "in the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions." *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (certifying two class under the TCPA). Benzinga's assertion that the Plaintiff's class definition is failsafe relies on their claim that the Plaintiff's class definition is limited to unauthorized calls on its face, which it simply does not do.

As such, the Defendant's motion should be denied.[1]

---

[1] Benzinga also attacks the Plaintiff's complaint because the complaint "fails even to mention the words 'automatic telephone dialing system'" and attempts to dismiss that claim. *See* ECF No. 9 at * 11. The Plaintiff agrees that her complaint does not mention an "automatic telephone dialing system" ("ATDS") and that's with good reason, as the Plaintiff is not alleging a claim for relief related to the Defendant's potential use of an ATDS and as such, the Defendant's motion to dismiss a claim that is not pled should be denied.

## BACKGROUND AND PLAINTIFF'S ALLEGATIONS

With respect to the National Do Not Call Registry, the Fourth Circuit Court of Appeals has explained, "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227)…The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list….Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

Here, Ms. Nichols alleges that Benzinga violated the TCPA by making telemarketing calls to numbers on the National Do Not Call Registry, including her own. Ms. Nichols residential telephone number is (408) 766-XXXX. *See* ECF No. 1 at ¶ 19. That number had been on the National Do Not Call Registry for at least 30 days prior to the date the calls were received and it has not been removed from the Registry since that time. *Id.* at ¶ 22. Ms. Nichols has never done any business with the Defendant. *Id.* at ¶ 23.

Despite this, Ms. Nichols received text messages from the Defendant on September 29, October 10, 15, 25, 26, 27, 29, 30 November 2, 3, 17, 18, 19, 20 (multiple texts), 21, 22, 23, 24, and 25, 27, 28, 29, 30 (multiple texts), December 2, 3, 4, 5, 6, 7 and 14, 2022. *Id.* at ¶ 25. The text messages all had similar content and some of them are below:



*Id.* at ¶ 26. Due to the *en masse* nature of telemarketing calls, the Plaintiff has

brought this action on behalf of the following putative class:

**National Do Not Call Registry Class**: All persons in the United
States whose (1) telephone numbers were on the National Do Not Call

Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

*Id.* at ¶ 31.

## <u>ARGUMENT</u>

1. **The Plaintiff has Alleged Sufficient Article III Harm as Violations of the TCPA by Making Multiple Telemarketing Calls to Numbers on the National Do Not Call Registry have been Nearly Universally Recognized by Courts to Establish Article III Standing.**

To establish Article III standing, the Supreme Court has held that the plaintiff must establish an injury in fact, traceable to the challenged conduct of the defendant, and a favorable judgment must be likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). An injury in fact exists if a plaintiff shows "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Id* at 339. (quoting, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351).

Where the injury asserted is an intangible interest, as is the case here, courts are required to examine both the history of the injury and Congressional judgment to determine whether Article III standing is satisfied. *Spokeo*, 578 U.S. at 340-342; *Buchholz v. Tanick*, 946 F.3d 855 (6th Cir. 2020) (dismissal of Fair Debt

Collection Act claim for lack of Article III standing affirmed where plaintiff failed to show he suffered a harm Congress intended to prevent or that his injury is analogous to a harm that the common law recognizes). In the case of the TCPA, the common law recognizes claims based on privacy and nuisance and the "solitude of another by committing the 'tort of intrusion upon seclusion," *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (citation omitted), and Congress, in passing the TCPA, determined that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy" and a "nuisance." Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394 (1991).

Since *Spokeo,* district courts have repeatedly held that plaintiffs who allege under the TCPA that telephone calls or text messages invade their privacy or are a nuisance have established Article III standing. *See Adam v. CHW Grp., Inc.,* No. 21-CV-19-LRR, 2021 U.S. Dist. LEXIS 170620, at *1 (N.D. Iowa Sep. 9, 2021) ("The vast majority of post-Spokeo Telephone Consumer Protection Act (TCPA) cases have concluded that the invasion of privacy, annoyance and wasted time associated with robocalls is sufficient to demonstrate concrete injury. Further, most courts find that the receipt of even one unwanted call is generally enough to clear U.S. Const. art. III's low bar for concrete injury. Statutory violations of the TCPA constitute concrete injuries that confer Article III standing.") Indeed, as

the Third Circuit has also explained in holding that receipt of an unanswered

prerecorded voicemail was sufficient to confer standing:

> "[C]ourts benefit from straightforward rules under which they can readily assure themselves of their power to hear a case." *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010). Our opinion today repeats our "understand[ing] that the *Spokeo* Court meant to reiterate traditional notions of standing." *Horizon*, 846 F.3d at 638. And the traditional notion of standing requires only that claimant allege some specific, identifiable trifle of injury. Where a plaintiff's intangible injury has been made legally cognizable through the democratic process, and the injury closely relates to a cause of action traditionally recognized in English and American courts, standing to sue exists.

*Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017). *See also*

*Parchman v. SLM Corp.*, 896 F.3d 728, 738-739 (6th Cir. 2018) ("The primary

purpose of the TCPA was to protect individuals from the harassment, invasion of

privacy, inconvenience, nuisance, and other harms associated with unsolicited,

automated calls. The Congressional findings focus on exactly these kinds of

individual wrongs.").

Ms. Nichols alleges at multiple places in her complaint that the calls were an

unwanted privacy and nuisance. *See* ECF No. 1 at ¶ 23-25 (Ms. Nichols's never

did business with the Defendant or provided her consent for them to make

telemarketing calls to her, and despite that they sent her more than 25 solicitation

text messages); ¶ 30 ("All class members (including Ms. Nichols, who is a class

member) have had their privacy invaded through receipt of the telemarketing calls.").

The Ninth Circuit's opinion concerning a similar TCPA claim is instructive. In *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), the defendants argued that the plaintiff had not established the concrete injury in fact necessary to pursue his TCPA claim in light of *Spokeo*. *Id.* at 1042. The Ninth Circuit disagreed, explaining: "[B]oth history and the judgment of Congress play important roles in supporting our conclusion that a violation of the TCPA is a concrete, *de facto* injury." *Id.* at 1043. Specifically, the Ninth Circuit reasoned: "The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress the harm." The Second Circuit also concurs, observing that receipt of unsolicited text messages, just like those at issue here, "sans any other injury," was sufficient to confer standing, as that is precisely the harm that Congress targeted in passing the TCPA. *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88, 92-94 (2d Cir. 2019). Here, Ms. Nichols placed her number on the National Do Not Call Registry so she could be free of unwanted telemarketing calls. Despite that, Benzinga called her more than two dozen times with solicitation messages.

Defendant's reliance on the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) is wholly misplaced.  *TransUnion* involved claims under the Fair Credit Reporting Act ("FCRA") for a class who asserted that they had inaccurate information placed in their credit files in violation of the FCRA. *TransUnion* states only certain statutory claims that have common law analogues present a sufficiently concrete injury-in-fact sufficient to support Article III standing. The Supreme Court however, *drew a distinction between the Fair Credit Reporting Act and the TCPA*, citing a TCPA decision authored by then Seventh Circuit Judge Barrett, recognizing "intrusion upon seclusion" as a harm "traditionally recognized as providing a basis for [a] lawsuit[] in American courts." *TransUnion LLC*, 141 S. Ct. at 2204 (citing TCPA case *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.), *cert denied*, 209 L. Ed. 2d 568, 2021 WL 1521010 (U.S. 2021)). *Gadelhak* makes it clear that it is the nature of the violation of the TCPA that gives rise to Article III standing *because* it had a common law analogue. *See Gadelhak v. AT&T Servs.*, 950 F.3d at 461-63. The Sixth Circuit is in accord: "Congress may choose to 'identify[ ] and elevat[e]' certain intangible, concrete harms by statute," as it has chosen to do with the TCPA." *In re Amedisys Holding, LLC,* No. 19-0510, 2020 U.S. App. LEXIS 6364, at *3 (6th Cir. Feb. 28, 2020) (citing *Buchholz v. Meyer Njus Tanick, PA*,

946 F.3d 855, 867 (6th Cir. 2020) (in turn citing *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 194 L. Ed. 2d 635 (2016)).

As with a published violation of inaccurate credit information, no additional

proof of harm (such as looking at each message and being wildly annoyed) is

needed to satisfy Article III standing for a class of TCPA call recipients, for which

there is no legitimate proof of consent, because of the tie to a recognized common

law harm. Ms. Nichols's telephone line received these unwanted calls, she has

sufficiently alleged her harm.

The Sixth Circuit's decision in *Ward v. Nat'l Patient Account Servs. Sols.,*

No. 20-5902, 2021 U.S. App. LEXIS 24369 (6th Cir. Aug. 16, 2021) highlights the

distinction between a TCPA claim, designed to protect privacy rights, and a purely

procedural claim requiring a debt collector to disclose its identity in collecting a

debt. The Sixth Circuit held: "the mere failure to provide certain information does

not mirror an intentional intrusion into the private affairs of another. Indeed, Ward

alleged in his complaint that NPAS, Inc.'s violation, *i.e.*, the use of an abbreviated

name, confused him, not that it invaded his privacy." *Ward*, 2021 U.S. App.

LEXIS 24369, at *9. Plaintiff, by contrast, sued for a violation of the TCPA

specifically alleging in her Complaint that her privacy rights, and those of her

proposed class, had been invaded, which is directly analogous to an intrusion on seclusion, a traditionally recognized common law claim.

Finally, Defendant's reliance on an Eleventh Circuit decision, *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019) should be ignored. In *Salcedo*, the plaintiff alleged a violation of the TCPA based on the receipt of a single unsolicited text message. Most notably, this case does not involve a single text message, but instead the receipt of more than twenty telemarketing texts to a number that was registered on the National Do Not Call Registry.  Indeed, the Eleventh Circuit addressed TCPA like those alleged here in *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1263 (11th Cir. 2019), where the Eleventh Circuit plainly held, "The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the Telephone Consumer Protection Act, 47 U.S.C.S. § 227, is a concrete injury that meets the minimum requirements of U.S. Const. art. III standing.". The Eleventh further discussed the difference between *Salcedo* and *Cordoba* in *Glasser v. Hilton Grand Vacations Co.,* 948 F.3d 1301, 2020 WL 415811 (11th Cir. 2020):

> A real injury remains necessary. But a recent decision, as it happens, resolves the point for the plaintiffs. "The receipt of more than one unwanted telemarketing call," the court concluded, "is a concrete injury that meets the minimum requirements of Article III standing." Cordoba, 942 F.3d at 1270. We appreciate that the point is close, as another decision of the court suggests. See Salcedo v.

Hanna, 936 F.3d 1162, 1168 (11th Cir. 2019). But Cordoba resolves it, establishing an Article III injury and giving plaintiffs standing to bring these claims.

If this Court is inclined to follow the Eleventh Circuit, it should follow the

Eleventh Circuit opinion that actually addresses the type of calling conduct in this

case in *Cordoba*.[2]

The harms alleged here are the exact types of harm courts within this circuit

have found sufficient even after *Spokeo* and are consistent with Ms. Nichols's

allegations about the calls being unwanted. Indeed, Judge Michelson conducted a

similar analysis when denying a substantively similar motion to dismiss in

*Chapman v. Nat'l Health Plans & Benefits Agency, LLC,* No. 22-10229, 2022 U.S.

Dist. LEXIS 138916, at *4-7 (E.D. Mich. Aug. 4, 2022):

> Here, NHP claims that Chapman's injury is not particularized because "she has not alleged any facts showing that she suffered any harm whatsoever from any of the four calls." (ECF No. 7, PageID.46.) But this does not construe the allegations in the light most favorable to Chapman. Chapman alleges [*5]  that NHP's phone calls went directly to her personal phone line... And the Court infers that Chapman was annoyed, frustrated, or confused by the calls enough to have her

---

[2] Indeed, the Eleventh Circuit is even potentially revisiting *Salcedo* after agreeing to hear a similar case *en banc. See Simpson v. J.G. Wentworth Co.,* No. 8:23-cv-152-KKM-AEP, 2023 U.S. Dist. LEXIS 67176, at *3 (M.D. Fla. Apr. 17, 2023) ("In her petition for rehearing en banc, Drazen requested that the court 'reevaluate the *Salcedo* holding" and "clarify the law regarding the elements necessary to pursue a TCPA claim.'", *citing Drazen v. Pinto*, 41 F.4th 1354 (11th Cir. 2022), *reh'g en banc granted, opinion vacated*, 61 F.4th 1297 (11th Cir. 2023).

husband answer the third one and have an attorney write a letter to NHP, requesting that it stop calling her. Therefore, the injury affected her individually even if, as NHP argues, Chapman did not answer the calls…

NHP also claims that Chapman has alleged a mere procedural harm rather than a concrete harm because Chapman did not answer any of the four phone calls nor did she plead that she "heard" any of the four calls. (ECF No. 7, PageID.48.) In other words, NHP argues that Chapman does not have standing if her only alleged injury was that NHP violated the TCPA with respect to her phone number.

Here, the alleged TCPA violations reflect a common-law injury elevated by Congress. The TCPA was passed into law in 1991 to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls." S. REP. 102-178 (codified at 47 U.S.C. § 227). It has even been said that the TCPA, which was "enacted . . . to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, grant[s] protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion." *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 U.S. Dist. LEXIS 207678, at *9 (E.D. Mich. Dec. 10, 2018) (quoting *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 858 (N.D. Ill. 2016)). The Sixth Circuit has [*8] also recognized that Congress has, through the TCPA, identified and elevated certain intangible, concrete harms. *See In re Amedisys Holding, LLC*, No. 19-0510, 2020 U.S. App. LEXIS 6364, at *3 (6th Cir. Feb. 28, 2020) ("[N]ot all procedural violations open the door to federal court. But *some* do, even when the procedural violation causes only an intangible injury." (emphasis in original)). Indeed, in the context of fax advertisements, the Sixth Circuit has found that "viewing or printing a fax advertisement is not necessary to suffer a violation of the statutorily-created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015). Though *Imhoff* was decided a year before *Spokeo*, courts in the Sixth Circuit have recognized that *Imhoff* is consistent with *Spokeo* because occupying a fax or telephone line is a concrete

injury. *See, e.g., Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers*, 235 F. Supp. 3d 882, 888 (S.D. Ohio 2017).

Turning to history, TCPA violations mirror traditional common-law injuries like invasion of privacy, showing a "close relationship" to a traditional concrete harm…This "close relationship" is also present here. Chapman likewise alleges that the four calls placed by NHP to her personal phone line invaded her privacy. (ECF No. 1, PageID.9.) The definition of invasion of privacy is an "[intentional intrusion], physically or otherwise, upon the solitude . . . of another." Restatement (Second) of Torts § 652B; *see also Ward*, 9 F.4th at 362. NHP's calls to Chapman plausibly fit within this definition. Chapman was on the National Do Not Call Registry and she contacted counsel to ask NHP to stop calling her after the third call. (ECF No. 1, PageID.7-8.)…

Distinct from *Ward*, there is a closer relationship between Chapman's alleged injury (multiple unwanted automated phone calls) and the common law harm of invasion of privacy. The unwanted automated calls gave Chapman a cause of action through the TCPA *and* invaded Chapman's privacy. Chapman made it clear that she did not want telemarketers calling. She did not consent to NHP calling her. (ECF No. 1, PageID.9.) She registered on the National Do Not Call Registry so she would not get telemarketing calls. (*Id.* at PageID.7.)…By disregarding that and calling her personal phone, NHP intruded on Chapman's private cell phone line…Because the statutory violation is closely related to the common-law injury, the Court finds that Chapman's injury resembles a close relationship to common-law harms. Thus, both congressional judgment and history show that Chapman's alleged injuries are concrete for standing purposes…In sum, the Court finds that Chapman's alleged injury is closely related to the traditional common-law harm of invasion of privacy. Thus, at this stage, Chapman has alleged a concrete injury, and has standing to pursue her claims.

Notably in *Chapman*, the Plaintiff did not even answer the calls. Here, Ms. Nichols was relentlessly texted on her own cellular telephone line despite taking the time to register it on the National Do Not Call Registry.

2. **The Plaintiff's Class is Not Failsafe and Should not be Stricken Prior to Discovery.**

Although a court may strike class allegations prior to a class certification motion being filed, it is only appropriate "where the complaint itself demonstrates that the plaintiff ***cannot*** meet the requirements for maintaining a class action." *Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 764 (N.D. Ohio 2020) (citation omitted; emphasis added). "A motion to strike class allegations is not a substitute for class determination and should not be used in the same way." *Wainess v. Smilemakers, Inc.*, No. 18-12177, 2018 U.S. Dist. LEXIS 216404, at *11-12 (E.D. Mich. Dec. 27, 2018). "Such motions are generally premature because '[w]ithout further insight [*12] into the facts, the Court lacks the foundation to conduct the rigorous analysis' required by Rule 23 and determine the appropriateness of class certification." *Id.*

This is because a court must "conduct a rigorous analysis" into whether the requisites of Rule 23 have been met prior to ruling on whether class certification is appropriate. *See In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir.

1996) (citation omitted). Indeed, the Sixth Circuit has forcefully rejected such speculation permitting class allegations to be stricken prior to any discovery in a TCPA case in *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding in a TCPA case that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.").

      Benzinga's motion focuses on its assertion that the Plaintiff's class definition only relies on unauthorized calls. *See* ECF No. 9 at *19. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). Even though the Plaintiff does not believe that Benzinga obtained the appropriate prior express written consent for its calls, Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be

an impermissible fail-safe class. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant.  [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015); *Olney v. Job.Com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813 (E.D. Cal. Sep. 30, 2013). Here, the Plaintiff avoided that potentially fatal flaw in drafting as there is no mention of consent or assertion that the only calls included are the "unauthorized" ones, as Benzinga asserts:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

*See* ECF No. 1 at ¶ 31. In fact the word "unauthorized" doesn't appear in the proposed class definition. Similarly, Benzinga's assertion that the Plaintiff's class definition doesn't articulate a theory of a violation of the TCPA is simply wrong, as the Plaintiff's complaint explicitly states, "Plaintiff, individually and as class representative for all others similarly situated, brings this action against Accretive Capital LLC d/b/a Benzinga for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including her own." *See* ECF No. 1 at ¶ 3. Indeed, the name of the class is the "National Do Not Call Registry Class" and the only cause of action being pursued is "Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(On Behalf of Plaintiff and the National Do Not Call Registry Class)" as listed in the Plaintiff's "First Cause of Action", of which there is only one. *See* ECF No. 1 at ¶ 47.

Merely mentioning that discovery will reveal that you have an affirmative defense to some class member claims is insufficient to strike class allegations, as appellate courts have ruled in the TCPA cases, including the Sixth Circuit. *See Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation

to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance"); *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented"). Even at the class certification stage, evidence of a defense as to some prospective class members does not render a class overbroad if the plaintiff demonstrates a means of ultimately excluding consumers that are subject to the defense from the class. *See True Health Chiropractic v. McKesson Corp.*, 896 F.3d 923, 932-33 (9th Cir. 2018) (predominance satisfied where "the record shows . . . little or no variation" in the forms used to obtain consent).  Here, since discovery has not commenced, there has been no showing that Benzinga made any calls with consent or that such calls were authorized. To determine which, if any, of Benzinga's calls were made with appropriate permission under the TCPA, discovery is required.

## <u>CONCLUSION</u>

For the reasons discussed herein, the Defendant's Motion to Dismiss should

be Denied.


Dated: May 2, 23          PLAINTIFF, on behalf of themselves
                           and others similarly situated,


                           */s/ Anthony Paronich*
                           Anthony Paronich
                           Email:  anthony@paronichlaw.com
                           PARONICH LAW, P.C.
                           350 Lincoln Street, Suite 2400
                           Hingham, MA 02043
                           Telephone:  (617) 485-0018
                           Facsimile:  (508) 318-8100

                           *Attorneys for Plaintiff*

## <u>Certificate of Service</u>

The foregoing document has been filed electronically, is available for viewing

and downloading from the ECF system, and has been served on all parties of record

via electronic service through the ECF system on May 2, 2023.

                           */s/ Anthony Paronich*
                           Anthony Paronich