UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI LEE NICHOLS, on behalf of
herself and others similarly situated,

      Plaintiff,

v.

ACCRETIVE CAPITAL LLC, d/b/a
BENZINGA,

      Defendant.

_____ /

Case No. 23-10473

F. Kay Behm
United States District Judge

## OPINION AND ORDER DENYING MOTION TO DISMISS (ECF No. 9)

### I.    PROCEDURAL HISTORY

Plaintiff, Terri Lee Nichols, filed this proposed class action complaint under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, against Defendant, Accretive Capital LLC (Benzinga) on February 24, 2023. (ECF No. 1). Benzinga filed a motion to dismiss the complaint, arguing that Nichols does not have Article III standing, that her class action allegations are improper, and that she fails to state a claim on which relief may be granted. (ECF No. 9). This motion is fully briefed, and the court held a hearing via video teleconference on November 1, 2023. (ECF Nos. 10, 11, 12).

For the reasons set forth below, the motion to dismiss is **DENIED**.

1

## II.     FACTUAL BACKGROUND

In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.  (ECF No. 1, ¶ 10).  Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id*. at ¶ 11, quoting 47 U.S.C. § 227(c)(1).  The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *Id*. at ¶ 12, citing 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*. at ¶ 13, quoting 47 C.F.R. § 64.1200(c)(2).  The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  *Id*. at ¶ 14, citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Nichols alleges that Benzinga violated the TCPA by making telemarketing calls to numbers on the National Do Not Call Registry, including her own.  Nichols'

telephone number had been on the National Do Not Call Registry for at least 30

days prior to the date the calls were received, and it has not been removed from

the Registry since that time.  (ECF No. 1, at ¶ 22).  Nichols also alleges that she has

never done any business with Benzinga.  *Id*. at ¶ 23.  Despite this, Benzinga sent

Nichols text messages on September 29, October 10, 15, 25, 26, 27, 29, 30

November 2, 3, 17, 18, 19, 20 (multiple texts), 21, 22, 23, 24, and 25, 27, 28, 29,

30 (multiple texts), December 2, 3, 4, 5, 6, 7 and 14, 2022.  *Id*. at ¶ 25.  The text

messages all had similar content and some of them are below:



*Id*. at ¶ 26.  The Complaint alleges that Benzinga sent these text messages to

solicit individuals to its stock advice services and plans.  *Id*. at ¶ 27.  Nichols

alleges Benzinga invaded the privacy of all class members by sending the text

messages.  *Id*. at ¶ 30.

Nichols brings a single count under the TCPA for violations of 47 U.S.C.

§ 227(c)(5) and 47 C.F.R. § 64.1200(c).  (ECF No. 1, Count I).  Nichols alleges that

the text messages Benzinga sent to her violate the TCPA because they were made

contrary to Nichols and all class members being on the National Do Not Call

Registry.  *Id*.  Nichols brings this claim on behalf of herself and the proposed class:

> All persons in the United States whose (1) telephone
> numbers were on the National Do Not Call Registry for
> at least 31 days, (2) but who received more than one
> telemarketing call from or on behalf of Defendant, (3)
> within a 12- month period, (4) at any time in the period
> that begins four years before the date of filing this
> Complaint to trial.

(ECF No. 1, ¶ 31).

## III.   ANALYSIS

### A.   Standing

#### 1.   *Standard of Review*

A challenge to a party's Article III standing invokes a federal court's subject

matter jurisdiction and is properly raised by a motion made under Federal Rule of

Civil Procedure 12(b)(1).  *In re Blasingame*, 585 B.R. 850, 858 (B.A.P. 6th Cir.

2018), aff'd, 920 F.3d 384 (6th Cir. 2019) (citing *Allstate Ins. Co. v. Global Med.

Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013) (unpublished) (citations

omitted); *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013)).  As explained in

*McQueary v. Colvin*, No. 15-00068, 2017 WL 63034, at *3 (W.D. Ky. Jan. 5, 2017), a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).  "A facial attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598); *see also Cartwright*, 751 F.3d at 759 ("A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the Court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis").

"A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *McQueary*, at *3 (quoting *Ritchie*, 15 F.3d at 598).  And, where a plaintiff relies on evidence outside the complaint to support a standing claim, the challenge is factual, and the Court instead must assess the factual basis for jurisdiction by weighing the evidence tendered.  *Forgy v. Stumbo*, 378 F. Supp. 2d 774, 776 (E.D. Ky. 2005) (citing *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.

2004)); *see also Kardules v. City of Columbus*, 95 F.3d 1335, 1347 n. 4 (6th Cir. 1996) (The Sixth Circuit has recognized a district court's authority to consider extrinsic evidence when addressing the issue of standing.).  Here, NAR launches a factual attack, relying on evidence outside the four corners of the Amended Complaint.  Accordingly, the court is required to "weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Bowers v. Wynne*, 615 F.3d 455, 457 (6th Cir. 2010) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 887 (6th Cir. 2005)).

> 2.    *Article III Standing*

Article III of the Constitution limits the jurisdiction of the federal courts to actual cases or controversies.  U.S. Const. art. III, § 2.  An essential component of the case-or-controversy requirement is the doctrine of standing, which "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 342–43 (6th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  To invoke the jurisdiction of a federal court, a plaintiff must demonstrate that he has standing to sue, a requirement "rooted in the traditional understanding of a case or controversy." *Spokeo*, 136 S. Ct. at 1547.  To establish standing, a plaintiff has the burden to establish that he has "(1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Id*.  At the pleading stage, the standing inquiry asks whether the complaint "clearly ... allege[s] facts demonstrating each element" of the standing inquiry.  *Id*. (quotation marks omitted).

Benzinga argues that Nichols' Complaint fails to sufficiently allege that she suffered a concrete injury.  First, Benzinga argues that Nichols' contention that Benzinga's actions constituted an invasion of privacy are conclusory without any explanation regarding how her privacy was invaded.  Additionally, Benzinga argues that the allegations in the Complaint do not sufficiently align with the common law tort of intrusion on seclusion because the text messages were not sufficiently "repeated", "unending" or "hounding."  (ECF No. 9, PageID.55-56, citing Restatement (Second) of Torts § 652B (cmt d), and *Salcedo v. Hanna*, 936 F.3d 1162, 1171 (11th Cir. 2019)).  Lastly, Benzinga argues that the procedural harm (the statutory violation) did not cause a concrete injury.  In response, Nichols points to a number of out-of-circuit and district court cases standing for the proposition that violations of the TCPA are akin to the common law claim of intrusion on seclusion "traditionally recognized as providing a basis for [a] lawsuit[] in American courts."  *TransUnion LLC*, 141 S. Ct. at 2204 (citing *Gadelhak*

*v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)).  Thus, according to Nichols, because she alleges that she received unwanted text messages, she has sufficiently alleged harm.

To meet the first prong of the standing test (injury in fact), Nichols must show "either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury."  *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021).  At the time the parties submitted their briefing to this court, they did not have the benefit of the Sixth Circuit's decision in *Dickson*, which this court finds controls the Article III standing issue presently before the court.[1]  In *Dickson*, the court examined a district court decision to dismiss a TCPA suit for lack of standing, focusing on the first prong – injury in fact – of the *Spokeo* test.  More specifically, the court looked at whether the plaintiff's receipt of ringless voicemails (RVMs) was a sufficient concrete harm for purposes of Article III standing.  69 F.4th at 340-41.  The district court concluded that the plaintiff received a single RVM and dismissed the suit for lack of standing, finding no concrete harm.  *Id*. at 341.  The court of appeals concluded that the plaintiff's

---

[1] On October 31, 2023, Nichols submitted a Notice of Supplemental Authority, providing a copy of *Dickson* for the court's consideration and the parties were able to address the application of *Dickson* to this matter at the hearing.  (ECF No. 13).

injury – the defendant's actions in disturbing his right to be left alone – was

"closely related to the *kind* of harm protected at common law by the intrusion-

upon-seclusion tort."  *Id*. at 346.  In reaching this conclusion, the court found the

Seventh Circuit's decision in *Gadelhak*, among others, persuasive.  More

specifically, the court noted that the *Gadelhak* decision found that receipt of a

small number of unwanted text messages (or even one such text) is a "modern

relative" of the intrusion-upon-seclusion tort.  *Id*. (quoting *Gadelhak*, 950 F.3d at

462, 463 n.2).  The court also pointed to *Susinno v. Work Out World Inc*., 862 F.3d

346, 351–52 (3d Cir. 2017), where the plaintiff similarly prevailed on evidence of a

single prerecorded call.  Further in *Van Patten v. Vertical Fitness Grp., LLC*, 847

F.3d 1037, 1043 (9th Cir. 2017), the court observed that "[u]nsolicited ... phone

calls or text messages, by their nature, invade the privacy and disturb the solitude

of their recipients."

The Sixth Circuit further rejected the line of cases from the Eleventh Circuit

on which Benzinga relies here, finding them inconsistent with the dictates of

*Spokeo* and *TransUnion*.  *Dickson*, 69 F.4th at 346-47 (citing and rejecting the

reasoning in *Grigorian v. FCA US LLC*, 838 F. App'x 390 (11th Cir. 2020); *Salcedo v.*

*Hanna*, 936 F.3d 1162 (11th Cir. 2019)).  More specifically, the court rejected the

same arguments that Benzinga makes here.  First, the court rejected the notion

that a TCPA plaintiff fails to allege a concrete injury where there is no evidence of

calls "repeated with such persistence and frequency" amounting to "hounding" of

the plaintiff.  *Id*. at 346.  Second, the court rejected the argument that a TCPA

plaintiff fails to allege a concrete injury because, traditionally, intrusions upon

seclusion entailed conduct like eavesdropping and wiretapping.  *Id*. at 347.

According to *Dickson*, such arguments wrongly focus on the *degree* of harm,

contrary to the teachings of *Spokeo* and *TransUnion*, which require the court to

focus on the *kind* of harm.  *Id*. at 346-347.  The court concluded, therefore, that

(1) the plaintiff suffered an intangible harm when the defendant sent an

unsolicited RVM to his phone; and (2) the plaintiff alleged an intangible harm that

bore a sufficiently close relationship to the traditional common law tort of

intrusion upon seclusion.  *Id*. at 348.

 While Dickson involved RVMs, not text messages, the analysis is the same

and leads this court to conclude that Nichols has standing here.  *Dickson* followed

the analysis of *Gadelhak*, which involved text messages.  There, the Seventh

Circuit rejected the Eleventh Circuit's conclusion that the receipt of an unwanted

automated text message is insufficiently concrete to constitute a cognizable injury

for purposes of Article III standing.  950 F.3d at 463.  Accordingly, pursuant to

*Dickson* and *Gadelhak*, the court finds that Nichols, who alleges that Benzinga

sent her dozens of unwanted text messages, has sufficiently identified a concrete injury for purposes of Article III standing.

     B.    <u>Motion to Strike Class Action Allegations</u>

          1.    *Standard of Review*

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). "Although courts generally defer ruling on class certification until discovery on the certification issue is complete ..., nothing in Rule 23 prevents a defendant from attempting to preemptively deny certification on the grounds that Rule 23(a) and (b) can never be satisfied."  *Schilling v. Kenton Cty., Ky*., 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011) (internal quotations omitted).  "The court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues."  *In re Am. Med. Sys*., 75 F.3d 1069, 1086 (6th Cir. 1996) (internal quotations omitted).

          2.    *Failsafe Class Allegations*

Benzinga asks the court to strike Nichols' definition of the class pursuant to Rule 12(f) because it claims that the definition is defective as a matter of law. According to Benzinga, Nichols' proposed class definition is an improper "failsafe" class.  "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a

class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)).  A failsafe class "includes *only* those who are entitled to relief." *Young*, 693 F.3d at 538 (emphasis in original).  "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id*. (quoting *Randleman*, 646 F.3d at 352).  Nichols defines the proposed National Do Not Call Registry Class as:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

(ECF No. 1, ¶ 31).  Nichols argues that it is premature to make any decisions regarding the class before discovery and before she files her motion for class certification.  Additionally, Nichols contends that the class definition is not an improper failsafe class.

Benzinga argues that the proposed class is a failsafe because it only includes people who received an "unauthorized telemarketing call" and thus,

everyone in the class is entitled to relief.  However, as Nichols asserts, nothing in the class description limits the class members to those who have received "unauthorized" calls and in fact, the class includes those who may have given prior consent for the calls.  More specifically, Nichols points out that she did not include language about individuals who have not provided their "prior express written consent" in the class definition, which courts have found that to be an impermissible failsafe class.  *See e.g.*, *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014).  Nichols' point is that by excluding from the class parameters whether someone has given prior written consent, *included* in the class are persons who both did and those who did not give prior written consent.  And, if some members of the class gave prior written consent to Benzinga (even if they are on the Do Not Call Registry), then some members of the class will not be entitled to relief.   This stands in contrast to cases where in impermissible failsafe was found.  For example, in *Sauter*, all three classes expressly identified all class members as not having provided prior express written consent.  2014 WL 1814076, at *8.  Accordingly, they were deemed failsafe classes because "defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class."  *Id*. at *9

(citation omitted).  The class definition here does not include any consent

provision and thus the present facts are more like that in *Carmouche v. A1*

*Diabetes & Med. Supply, Inc.*, 586 F. Supp. 3d 795, 797 (W.D. Tenn. 2022).  In

*Carmouche*, the court examined the following class definition to determine if it

was a failsafe class:

> All persons and entities throughout the United States (1)
> to whom A1 Diabetes & Medical Supply, Inc. placed, or
> caused to be placed, a call directed to a number
> assigned to a cellular telephone service, but not
> assigned to an A1 Diabetes & Medical Supply, Inc.
> customer, (2) by using an artificial or prerecorded voice,
> (3) from four years preceding the date of this class
> action complaint through the date of class certification.

In examining this class definition, the court first observed that "courts have

generally found that proposed classes defined based on a lack of consent were

impermissible 'fail-safe classes.'"  *Id*. at 805.  But this class definition in

*Carmouche* did not reference consent and thus, it was deemed not a failsafe class.

*Id*. at 806.  The class definition here is more like that in *Carmouche* and unlike that

in *Sauter*.  As explained above, it includes within its scope persons on the National

Do Not Call Registry who may have given express written consent to Benzinga and

those who did not.  Accordingly, the court finds that the proposed class definition

here is not an improper failsafe class and the motion to strike is **DENIED**.

C.     <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

In its opening brief, Benzinga argues that the Complaint fails to state a

claim because Nichols did not plausibly allege the use of an Automatic Telephone

Dialer System.  Nichols points out in the response that she does not make any

claim under this provision of the TCPA.  The court agrees that Nichols make no

such claim in her Complaint.  Benzinga has not moved to dismiss the merits of the

TCPA claim asserted in the Complaint and, thus, the motion to dismiss based on

Rule 12(b)(6) is **DENIED**.

IV.    **CONCLUSION**

For the reasons set forth above, the motion to dismiss is **DENIED**.

       **SO ORDERED**.

Date: November 2, 2023                    <u>s/F. Kay Behm</u>
                                          F. Kay Behm
                                          United States District Judge